[Civ. No. 5169.  Third Appellate District.—November 13, 1934.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA (a Corporation), Respondent, v. F. H. JOHNSON, as Auditor, etc., Appellant.

George E. Frioux for Appellant.

J. Leroy Johnson and John U. Calkins, Jr., for Respondent.

THOMPSON, J.—The Auditor of San Joaquin County has appealed from a judgment directing a writ of *mandamus* to issue commanding him to draw a warrant on the treasury of that county in payment of a claim for $110.95 which was previously allowed by the board of supervisors for hospital services furnished by the petitioner at the request of the board.  It is asserted the claim is illegal and

that there is no authority of law to pay it from the county treasury.

F. H. Johnson is the Auditor of San Joaquin County. The county maintains a general hospital at Stockton. Letha Patrick was an indigent person who resided in that county. Miss Patrick was taken to the hospital for treatment for a brain abscess. It became necessary to perform an operation to preserve her life. The San Joaquin Hospital lacked adequate facilities for a proper performance of the operation. The board of supervisors authorized the sending of this patient to the University of California Hospital at San Francisco for the performance of the operation. The last-mentioned hospital was fully equipped to perform the operation, and did so at the request of the board of supervisors of San Joaquin County. A claim for $110.95 for this service was presented to the board of supervisors and allowed. This claim was then presented to the Auditor, who refused to pay it on the ground that it was an illegal claim not authorized by law. Upon application to the Superior Court of San Joaquin County, based upon the foregoing facts, a demurrer to the petition for a writ of *mandamus* was overruled and ten days were allowed the Auditor in which to answer. The Auditor refused to answer, and a judgment by default was thereupon rendered against him, in which it was ordered that a writ of *mandamus* issue directing him to draw his warrant upon the treasury of that county in payment of the claim. From that judgment the Auditor has appealed.

We are of the opinion the board of supervisors of the county of San Joaquin is not authorized by law to incur an obligation against the county for hospital or surgical services in behalf of an indigent person who resides in that county, to be furnished by a hospital outside of the county.

The authority of a board of supervisors to contract with a hospital for the care of indigent persons in emergency cases is confined by the provisions of section 4041.16 of the Political Code to *"hospitals in the county* or city and county" of which the board has jurisdiction. That section provides in part:

"(1) Under such limitations and restrictions as are prescribed by law, and in addition to the jurisdiction and powers otherwise conferred, the boards of supervisors, in

their respective counties, shall have the jurisdiction and powers to provide for the care and maintenance of the indigent sick or dependent poor of the county, and for that purpose to levy the necessary property or poll taxes, or both; provided, that a suitable graduate or graduates in medicine shall be appointed to attend to such indigent sick or dependent poor *in the county hospitals* and almshouses; provided, further, *that the board shall not let the care, maintenance or attendance of such indigent sick or dependent poor by contract to any person;* except that the board shall be authorized and empowered to secure by agreement for the needy sick and dependent and partially dependent citizens *in cases of emergency, hospital care* . . . from persons, firms and corporations then and there maintaining and operating hospitals *in the county* or city and county. . . . "

The foregoing statute is an express limitation on the power of the board to contract for the medical care of its indigent sick persons with "hospitals in the county". The statute specifically prohibits the board from "letting the care, maintenance or attendance of such indigent sick", by contract to any institution "except . . . hospitals in the county". Even without the express prohibition against contracts for the care of the indigent sick with other institutions, on the doctrine of *expressio unius est exclusio alterius,* the authorization for the board to make such contracts with hospitals in the county, by necessary implication excludes the right to make contracts with hospitals outside of the county. (59 C. J., p. 894, sec. 582; 25 R. C. L., p. 98, sec. 229.) There may be good reason for this limitation. Otherwise the board might exercise its discretion in an emergency case by sending the patient to the Mayo Hospital in Minnesota, or elsewhere, because it assumed that better professional services might thereby be procured. It is suggested that in the interest of charity a liberal construction of the statute should prevail. Charity is commendable, but it should not be conferred at the expense of others over whose funds the donors have no legal control.

The respondent in this proceeding contends that the authority for the board to incur this expense may be found in the Pauper's Act of California (Stats. 1901, p. 636,

and amendments thereto; Act 5814, sec. 1, Deering's Gen. Laws of California, 1931), and in section 4307 of the Political Code. Neither of these last-mentioned provisions authorizes a board to contract for the care of indigent sick, in emergency cases or otherwise, with institutions outside of its own county. These statutes must be read together with section 4041.16 of the Political Code, which limits the authority to contract for services and care of the indigent sick to hospitals in the county. The Pauper's Act provides in that regard:

"Every county and every city and·county shall relieve and support all pauper, incompetent, poor, indigent persons and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, or by their own means, or by state hospitals or other state or private institutions."

Section 4307, subdivision 7, of the Political Code, upon which the respondent relies, provides that:

"The following are county charges:

. . . . . . . . . . . .

"(7) The necessary expenses incurred in the support of the county hospitals, almshouses, and the indigent sick and otherwise dependent poor, whose support is chargeable to the county. The board of supervisors may, in its discretion, authorize the payment of expenses incurred, by county authorities, for temporary, emergency, or extended care or treatment of indigent patients of such county, *by local hospitals.*"

There is nothing in either of the two statutes last mentioned which by implication or otherwise extends the authority of the board of supervisors to contract for the care of indigent sick persons with institutions outside of the county. The Pauper's Act merely provides that a county shall care for its indigent poor and sick inhabitants. Section 4307 of the Political Code also limits the authority of the board to contract for the care or treatment of temporary emergency cases only with "local hospitals". The reading of these last-mentioned statutes, together with section 4041.16 of the Political Code, confirms the imperative conclusion that a board of supervisors has no power to contract for the care of the indigent sick with any hospital

outside of its county. The claim against the county of San Joaquin was therefore unauthorized and illegal. It was the duty of the Auditor to refuse to draw his warrant in payment of this illegal claim.

The judgment is reversed.

Plummer, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 13, 1934, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 10, 1935.